IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCESCO PERRI, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-0137 |
| | ) | |
| JO ANNE B. BARNHART | ) | Judge Schwab |
| Commissioner of Social Security | ) | |
|     Defendant, | ) | |

## MEMORANDUM OPINION

**October 31, 2005**

    **I.**    **Introduction**

Plaintiff, Francesco Perri, brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) seeking review of the final ruling of the Commissioner of Social Security (Commissioner) denying his application to receive Disability Insurance Benefits (DIB) under title II of the Act, 42 U.S.C. §§ 401-433. Consistent with the customary practice of the Western District of Pennsylvania, the parties have submitted cross motions for summary judgment.

After a careful review of the Administrative Law Judge's (ALJ) Decision, the memoranda of the parties, and the entire record, the Court finds that the ALJ's ruling that plaintiff's impairments were not disabling within the meaning of the Act is supported by substantial evidence, and therefore will deny plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the determination by the Commissioner.

## II.     Procedural History

Plaintiff filed a claim for DIB on April 18, 2002, alleging disability beginning November 26, 2001 resulting from an allergic reaction. Plaintiff requested a hearing which was held on March 25, 2003. On September 26, 2002, the ALJ issued a decision finding that plaintiff's impairments were not disabling within the meaning of the Act because he remained capable of performing a range of "light work" jobs that existed in significant numbers in the economy identified by the Vocational Expert (VE). R. 14-28.

The ALJ determined that the claimant was not entitled to a period of disability or disability insurance benefits due to fibromyalgia and chronic fatigue syndrome, based on his application filed April 18, 2002 under sections 216(i) and 223. R. 23.

### Statement of the Case

#### A.     Factual Background

Plaintiff was born on October 8, 1960 and was 42 years old at the time of the ALJ's decision. R.295. He has a high school and college education. R. 295. As defined by 20 C.F.R. § 404.1563, plaintiff is, and has been at all relevant times, considered a "younger person." He worked as a computer programmer and data processor over a period of approximately 15 years. R. 298-99. Plaintiff stated that he enjoyed his job, but that his condition left him physically incapable of doing anything. R. 305. Plaintiff has not worked since November 26, 2001 following an allergic reaction to the prescribed medication Prednisone which he was prescribed to fight a sinus infection. R. 116.

Prior to 2001, plaintiff's medical records show a history of chronic fatigue, chronic, sinusitis, allergies and hypothyroidism. R. 149, 238. Some of the symptoms he cites include severe fatigue, muscle aches, sore throat, headaches, difficulty concentrating, as well as

depression. R. 302-04.  Plaintiff testified that these symptoms limit his ability to drive for longer than an hour and that he has difficulty performing household tasks such as cooking and cleaning. R. 296-97, 306.  He testified that he has moved in with his sister because he can no longer manage his apartment. R. 306.  He maintains contact with his family and one friend with whom he goes to see a movie once a month depending on how he feels. R. 104.  Plaintiff also jogged for a period of six months despite saying that his condition got worse during that time. R. 284.

Dr. Karen Asbury, M.D. documented treatment as a treating physician to Plaintiff between April 2001, and January 2002.  Dr. Asbury diagnosed chronic fatigue syndrome (CFS). R. 154.  In a note dated November 19, 2001, Dr. Asbury described plaintiff's condition as "debilitating" and as leaving him "unable to work." R. 146.

The record indicates that plaintiff's treating physician Dr. J. Ronald Wilk, D.O. made a primary diagnosis of CFS with a secondary diagnosis of fibromyalgia. R. 188.  In April 2002, Dr. Wilk determined plaintiff's psychological functions as being "unable to engage in stress situations or engage in interpersonal relations," a "marked" limitation. R. 188.  Dr. Wilk previously reported that he thought plaintiff was unable to work in November 2001. R. 146.

In July 2002, plaintiff visited Dr. N.A. Patel, M.D. who is a specialist in internal medicine. R. 179.  Dr. Patel found plaintiff's neurological findings and pulmonary function to be normal. R.181.  Dr. Patel observed no swelling in the elbows, as well as normal range of motion in the knee, wrists, elbows, and shoulders. R. 181.  He also noted that the plaintiff complained of headaches all over his head and joint and muscle pains. R. 180.  Plaintiff's air entry was determined to be good with normal sinus rhythm. R. 180.  A review of the medical records showed the Epstein-Barr virus and nuclear antibody was greater than 5, which was in the

positive range. R. 181.  Dr. Patel's final diagnosis was a history of chronic fatigue syndrome and fibromyalgia since 1987. R. 181.

Plaintiff visited rheumatologist Dr. Thomas Geppert, M.D. for a consultative exam in August 2002. R. 284.  Dr Geppert noted plaintiff's complaints of symptoms consistent with fibromyalgia, but did not observe any tenderness over the fibromyalgia tender points. R. 284.  Dr. Geppert reported that plaintiff's response to exercise was contrary to the usual response of fibromyalgia patients. R. 284.  He observed that an inflammatory disorder could be the cause of plaintiff's fatigue and joint pain and wrote that a diagnosis of fibromyalgia "is largely a diagnosis of exclusion." R. 283.  Dr. Geppert observed plaintiff's white blood cell count to be slightly abnormal and also found that plaintiff had "a fairly markedly abnormal platelet count." R. 284.

In September 2002, Dr. Octavio de la Pena, M.D. consultatively examined plaintiff for chronic abdominal pain and diarrhea. R. 239.  A colonoscopy was performed with "unremarkable" results. R. 241.  Dr. de la Pena advised plaintiff to consume a fiber diet and take fiber supplements.

Also in September 2002, Dr. Allen Reuben, M.D. observed that plaintiff had a fairly benign epidemiology as well as unremarkable test results following neck, chest, heart, and abdominal exams. R. 277.  Dr. Reuben did not diagnose plaintiff with CFS, but said he may have the condition. R. 277.

The VE opined that the plaintiff could not perform his past work, but that he could perform some light work jobs available in the Texas and national economy. R. 313.  These jobs were described as existing in significant numbers in the economy and they included office helper, mail clerk and blood donor unit assistant. R. 312-13.  These occupations were consistent

with the ALJ's restriction that the light work be limited to a climate-controlled environment free of irritants, fumes, dust, smoke, and lint. R. 312. He also precluded commercial driving, working at heights and work near dangerous machinery.

On April 11, 2003, the ALJ made the following findings:

1. The claimant met the disability insured status requirements of the Act on November 26, 2001, the date the claimant stated he became unable to work, and he continues to meet them through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since November 26, 2001.

3. The medical evidence establishes that the claimant has sinusitis, gastroesophageal reflux disorder with a history of gastritis, esophagitis, low blood sugar, and tinnitus, but these impairments, considered both singly and in combination, constitute only slight abnormality having such minimal effect on him that they would not be expected to interfere with his ability to work, regardless of age, education or work experience; therefore, these impairments do not constitute a severe impairment. See 20 C.F.R. §§ 404.1520(c)(1), 404.1521, 404.1523, Stone v. Heckler, 752 F.2f 1099 (5th Cir. 1985).

4. The medical evidence establishes that the claimant has severe chronic fatigue syndrome or fibromyalgia, major depressive disorder, anxiety disorder, and chronic headaches, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

5. The claimant has alleged pain and weakness and that he cannot work as a result of his symptomatology. The credible medical and other evidence, however, establish that the claimant has had a residual functional capacity for restricted light work activity at all times relevant to this decision, and claimant's testimony is found credible in supporting symptomatology only to that extent.

6. The claimant has the residual functional capacity to lift, carry, push and pull twenty pounds occasionally and ten pounds frequently as well as stand, walk and sit about six hours each out of an eight-hour workday. See 20 C.F.R. § 404.1545.

7. The claimant is unable to perform his past relevant work as data/information processing specialist and analyst.

8. The claimant's residual functional capacity for the full range of light work, as that phrase is defined in the regulations is reduced by inability to commercially drive or

    work around significant unprotected heights or potentially dangerous, unguarded moving machinery. In addition, the claimant requires a climate controlled work environment; simple, repetitive job instructions; no customer service, and no more than "moderate" noise in the work environment.

9. The claimant is 42 years old, which is defined as a younger individual. See 20 C.F.R. § 404.1563.

10. The claimant has a high school diploma and college degree, which is defined as more than a high school education. See 20 § C.F.R. 404.1564.

11. In view of the claimant's age and residual capacity, the issue of transferability of work skills is not material. See § C.F.R. 404.1568.

12. Based on an exertional capacity for light work, and the claimant's age, education and work experience, section 404.1569 of Regulations No. 4. and Rules 202.21 and 202.22, Table No.2, Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion of "not disabled."

13. Although the claimant's additional nonexertional limitations do not allow him to perform the full range of light work, using the above-cited rules as a framework for decisionmaking, there are a significant number of jobs in the national economy which he could perform. Examples of such jobs are: office helper, of which there are 4,000 such jobs in Texas and 60,000 in the U.S.; mail clerk, of which there 11,000 such jobs in Texas and 164,000 in the U.S.; and blood donor unit assistant, of which there are 10,000 such jobs in Texas and 145,000 in the U.S.  Therefore, these jobs exist in significant numbers in the national economy. See C.F.R. § 404.1568.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. See 20 § C.F.R. 404.1520(f).

R. 21-23)

    **B.    Issues**

In a brief supporting his motion for summary judgment, plaintiff disputes the ALJ's findings on the following grounds: 1) the ALJ did not appropriately discuss the medical evidence and instead engaged in lay medical opinion making, 2) the ALJ improperly evaluated the testimony and statements of the plaintiff, and that 3) "the decision of the Commissioner is not supported by substantial evidence in light of improper questioning of the VE by the ALJ who

failed to proffer a hypothetical which accurately sets forth all the plaintiff's specific work-related limitations of function as documented in the administrative record" (Plaintiff's Brief, 14).

### III.     Standards of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute.  42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2].  Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990).

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v.*

---

[1] Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .
42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:
    The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

*Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988). The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla."*Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on

8

medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints of pain, even when those assertions are not confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986). In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in

any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A). When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.
>
> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant

> can perform, consistent with her medical impairments, age,
> education, past work experience, and residual functional capacity.
> The ALJ *must analyze the cumulative effect of all the claimant's
> impairments* in determining whether she is capable of performing
> work and is not disabled. The ALJ will often seek the assistance of
> a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923). Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and

*specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli*, 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

Finally, pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky*. Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.   *See* 20 C.F.R. § 404.1529(c).  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the

determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.  The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195.  That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067.  Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain *without contrary medical evidence. Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985);  *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998).  "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence.  Instead, the Secretary must present *evidence to refute the claim*.  See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

### IV. Discussion

#### A. Medical Records

The ALJ properly evaluated substantial medical evidence to support the determination that plaintiff was not disabled. Such relevant evidence as a reasonable mind might accept as adequate to support a conclusion meets the substantial evidence requirement. *Ventura v. Shalala*, 55 F.3d 900 (3d Cir. 1995). Evidence that is overwhelmed by other evidence will not be considered substantial. *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983). Plaintiff contends that the evidence overwhelmingly favors his claim of disability based on largely subjective complaints echoed in physicians' reports. Along with the plaintiff's demeanor, the ALJ thoroughly evaluated the medical findings and tests performed on the plaintiff to come to a properly supported conclusion that plaintiff is not disabled.

Allegations of disabling pain and other subjective symptoms must be supported by objective medical evidence. 20 C.F.R. § 416.929(a). Despite several diagnoses of fibromyalgia and complaints of fibromyalgia-type symptoms, rheumatologist Thomas Geppert found that plaintiff did not possess any tenderness over the fibromyalgia tender points. R. 284. Furthermore, Dr. Geppert noted that plaintiff's testimony that he had actively jogged for six months was inconsistent with the responses of patients with fibromyalgia. R. 284. According to SSR 99-2p, there is "considerable overlap of symptoms between CFS and fibromyalgia," but individuals with CFS who have tender points will have a medically-determinable impairment. R.18. The ALJ properly relied on this medical evidence in determining plaintiff's complaints to be not entirely credible.

On October 23, 2005, Dr. Karen Asbury found that the plaintiff had no sinus infection despite noting his "chronic sinus problems." R. 149. Citing his reaction to the prescription drug

Prednisone as "the straw that broke the camel's back," plaintiff contends that since having an allergic reaction to the drug, his symptoms have neither worsened nor improved since November 2001. R. 302. Following his allergic reaction the record shows that Dr. N.A. Patel found plaintiff to have good bilateral air entry and normal sinus rhythm in an examination done in July 2002, indicating an improvement. R. 180. Not only does Dr. Patel's exam suggest that plaintiff's health progressed, it also gave the ALJ reasonable cause to question plaintiff's credibility. Dr. Patel concluded the exam without giving plaintiff a present diagnosis of CFS and fibromyalgia, instead writing that plaintiff merely had a history of both conditions since 1987. R. 181. The plaintiff relies on this diagnosis as evidence of the presence of disabling illnesses even though no present diagnosis exists. The medical records that plaintiff relies on lack objective medical findings to support a claim of disability.

In September 2002, Dr. Reuben noted plaintiff's complaints concerning his condition but found "no underlying medical problems to speak of" in addition to a benign epidemiology. R. 277. "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings," the more weight that opinion will be given. 20 C.F.R § 404.1527(3). The consistency of an opinion with the record as a whole will also be given more weight. 20 C.F.R. § 404.1527(4). In the present case numerous inconsistent findings exist that conflict with plaintiff's numerous complaints and which, therefore, support the ALJ's determination.

Plaintiff's brief heavily relies on the opinions of Dr. Karen Asbury and Dr. J. Ronald Wilk to support the conclusion that plaintiff is disabled as well as an assertion that ALJ misinterpreted medical evidence. In a report dated April 15, 2002, Dr. Wilk wrote that plaintiff's combination of symptoms left him disabled resulting from his mental condition and

16

CFS. R. 188, 189. Dr. Wilk restricted plaintiff's physical activities to sitting for three hours, standing for one hour, and sitting at a keyboard for more than two hours; Dr. Wilk also advised plaintiff not to lift or carry more than five pounds. R. 286. Yet, during this time plaintiff testified that he was able to jog as physical therapy. R. 284.

The opinion of a claimant's treating physician that he cannot return to work is entitled to substantial weight. *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981). The treating physician's opinion does not control however, and the ALJ need not be bound by it. *Hartranft v. Apfel*, 181 F.3d 358, 361 (3d Cir. 1999). The ALJ's decision was based on the plaintiff's testimony regarding his activities as well as numerous other medical opinions that equivocate about plaintiff's condition due to benign medical tests. R. 284. Synthesizing the numerous unremarkable medical tests with medical opinions that merely echo plaintiff's complaints of severe and disabling pain without providing convincing objective medical evidence in support, the ALJ properly concluded that plaintiff was not disabled.

### B.     Plaintiff's Credibility

An ALJ may make credibility assessments of a claimant's testimony regarding pain and work limitations. *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983). The court ordinarily defers to an ALJ's credibility to assess the claimant's demeanor. *Alt. Limousine, Inc. v. NLRB*, 243 F.3d 711, 718 (3d Cir. 2001). If an ALJ concludes that a claimant's testimony is not credible, the basis for that conclusion must be indicated in the decision. *See* 20 C.F.R. § 404.1529(c). Where medical evidence supports a claimant's testimony regarding his or her pain, the ALJ cannot reject the claimant's subjective account in the absence of contrary medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

According to 20 § C.F.R. 416.929(c)(3)(i), a claimant's daily activities may factor in evaluating the credibility of the subjective complaints. The ALJ was swayed by plaintiff's testimony that he was able to complete errands as well as his testimony that he jogged for a period of six months, apparently against the instruction of Dr. Wilk, despite a purported deteriorating condition. R. 296, 306. Plaintiff also testified that he goes to the movies once a month and continues relationships with a friend and his family. R. 309. Plaintiff testified that he drove to the hearing on April 11, 2003 and that he could drive for up to an hour before his pain would cause him too much discomfort. R. 296, 297.

The ALJ did not disbelieve all of plaintiff's complaints, but rather found many of them to be exaggerated. R. 19. The ALJ reasoned, based on plaintiff's testimony as well as objective medical evidence, that plaintiff could lift, carry, push or pull twenty pounds occasionally and ten pounds frequently as well as stand, walk and sit for six out of right hours. R. 19. However, the ALJ found that plaintiff was limited by his reduced ability to drive for long period of time as well as his sensitivity to noise, noxious fumes, dust, lint and smoke. R. 19.

      C.    **Hypothetical Question/ Vocational Expert's Opinion**

Deficiencies in hypotheticals posed to a vocational expert may improperly influence the ALJ's decision, in which case, remand is appropriate. *Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984); *Wallace v. Secretary of Health and Human Services*, 722 F.2d 1150, 1155 (3d Cir. 1983). In *Podedworny* and *Wallace*, the ALJ had omitted one of the claimant's impairments from the hypothetical, and the Court of Appeals for the Third Circuit found, "the fact that these conditions were not included in the hypothetical question rendered that question defective, and thus the expert's answer cannot be considered substantial evidence." *Podedworny*, 745 F.2d at 218 (citing *Wallace*, 722 F.2d at 1155). The Court of Appeals further held: "[t]he insufficiency

of the ALJ's proffered hypothetical question and the corresponding deficiency in the answer of the vocational expert would necessitate a remand to the Secretary for further proceedings." *Podedworny*, 745 F.2d at 219 (citing *Wallace*, 722 F.2d at 1155).

In this case, plaintiff's limitations that are supported by the record, as found by the ALJ, were factored into the ALJ's hypothetical question posed to the VE, and therefore into the VE's opinion about potential jobs plaintiff is capable of performing in the economy. Since the ALJ made valid and supported determinations about plaintiff's impairments based on testimony and medical evidence, the questioning of the VE by the ALJ was not improper. The VE disagreed with the plaintiff's contention that his previous job was the best situation for him that offered the least amount of stress. R. 304, 21.

### V.     Conclusion

While the court empathizes with plaintiff's impairments, the decision of the Commissioner must be affirmed under the substantial evidence standard of review. The Court finds that the ALJ's ruling that plaintiff retained the ability to complete a significant range of light work is supported by substantial medical evidence. The Court will deny plaintiff's motion for summary judgment and grant the Commissioner's motion for summary judgment.

**s/ Arthur J. Schwab**
**Arthur J. Schwab**
**United States District Judge**
